BEFORE THE THIRD DIVISION, MARCH 26, 1945

**No. 50063.**—Protests 944230–G, etc., of E. H. Holler (Nogales).

KEEFE, Judge: In this case it is contended that certain fish, imported into the United States from Mexico through the port of Nogales, Ariz., assessed at 1 cent per pound under paragraph 717 (a), are entitled to free entry as the product of American fisheries under paragraph 1730 (a), Tariff Act of 1930.

Identical issues were before this and our appellate court in *United States* v. *Holler*, 28 C. C. P. A. 105, C. A. D. 132, and *United States* v. *Holler*, 28 C. C. P.A. 124, C. A. D. 133. The records therein were admitted in evidence and made a part of the record here. To supplement such evidence both the plaintiff and defendant produced additional witnesses and considerable documentary evidence. We have carefully examined the evidence produced in those cases and also the additional testimony and the documentary evidence presented herein. We find nothing in the combined record that changes the state of facts existing in the foregoing cases.

In the first *Holler* case, C. A. D. 132, our appellate court held that fish caught from an American fishing vessel under supervision of its American captain had the status of the product of American fisheries, and that such status was not altered by anything occurring thereafter prior to importation. There the court also construed paragraph 1730 (a) as providing free entry for fish not further advanced than specified in the proviso, at least when imported by the party catching the fish, or on whose account they were caught, and landed, although not landed solely for transportation. The court further held that the issuance of an invoice or *factura* was consistent with the idea that the society was the agent of those persons admitted as associates, and that such *factura* was not in itself proof of ownership by the society and that it was a necessary factor in getting the fish

across the border line. The court failed to agree with the Government's contention that the fish became the property of the society by virtue of the Mexican decree the moment they were taken from the water. In that regard, the court stated that if they were caught beyond the 3-mile limit and had been forthwith transported to the United States without landing in Mexico, the Mexican Cooperative Society of Fishermen would not have acquired title, and that the same rule would apply to fish taken from Mexican waters when caught by permission of the Mexican Government. That as the Mexican decree had no effect until the fish were landed, they had already become American fish and nothing that happened thereafter was sufficient to change that status. The court construed paragraph 1730 (a) as exempting from duty such fish as were there under consideration and was of the opinion that, in order to encourage the growth of American fisheries, Congress intended that fish, the product of such fisheries, when within the limitations of the provisos, should be exempt from duty.

In the second Holler case, C. A. D. 133, the court held that fish caught from canoes by native fishermen and carried ashore therein, the canoes having been hired by the captain of the American vessel, were not products of American fisheries, and, as there was no evidence showing which canoes were towed to and from the fishing grounds by such vessels, all fish taken by such canoes were held dutiable. In this connection, the court held that when fish caught from the American fishing vessel were commingled with those from canoes at the time of entry into the United States, all were dutiable, because the very nature of the product made it incapable of ready segregation.

The defendant made several motions to dismiss various protests. We have carefully examined the same and are of the opinion that the motions should be denied.

A consideration of all the evidence before us fully establishes that the American fishing boat, Mabel, was an American vessel documented under the laws of the United States and under registry for use in fishing; that the ship was legally in foreign waters for that purpose; and that it was subsequently lost and the registry relinquished to the Government, the American consul in Mexico being duly notified.

The evidence also establishes that the fish in question were caught either by fishermen on the deck of the Mabel or by fishermen in canoes hired for such purpose, some of the canoes being towed to and from the fishing grounds by the American fishing vessel, and others proceeding under their own power. In view of the holding of our appellate court, fish caught in canoes which were neither towed to nor from the fishing grounds by the Mabel are not to be regarded as products of American fisheries. Inasmuch as our appellate court held that the very nature of this product made it incapable of ready segregation, we find that fish caught from the deck of the Mabel or from towed canoes which are commingled with fish caught from canoes which were not towed are not entitled to free entry as products of American fisheries.

In view of the evidence before us and following the decisions of our appellate court, we hold that protests 944231–G and 944232–G, covering fish caught by fishermen in canoes which were rented and towed by the Mabel, and protests 940084–G, 948861–G, 948862–G, and 974706–G, covering fish caught from the Mabel, are entitled to free entry as the products of American fisheries under paragraph 1730 (a), as claimed. Protests 944230–G, 974702–G, 974703–G, 974704–G, 974705–G, and 974707–G, covering fish caught from the Mabel and commingled with fish caught from canoes or other fishing boats not established to have been towed, and protests 974708–G, 974709–G, and 974710–G, where the record fails to establish that the fish were caught from towed canoes or from the Mabel, are overruled.

Judgment will therefore be entered accordingly.